# United States Court of Appeals

*for the*

# Third Circuit

Case No. 23-8050

GERALD FORSYTHE, individually and on behalf of all others similarly situated,

*Lead Plaintiff-Respondent*,

– v. –

TEVA PHARMACEUTICALS INDUSTRIES LIMITED, EREZ VIGODMAN, EYAL DESHEH, ROBERT KOREMANS, MICHAEL DERKACZ, KARE SCHULTZ, MICHAEL MCCLELLAN, and BRENDAN O'GRADY,

*Defendants-Petitioners*.

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA IN CASE NO. 20-4600-KSM
HONORABLE KAREN S. MARSTON

## RESPONSE TO PETITION FOR PERMISSION TO APPEAL PURSUANT TO FED. R. CIV. P. 23(f) AND FED R. APP. P. 5

TIMOTHY J. PETER
FARUQI & FARUQI, LLP
1617 JFK Boulevard, Suite 1550
Philadelphia, Pennsylvania 19103
(215) 277-5770
tpeter@faruqilaw.com

JAMES M. WILSON, JR.
FARUQI & FARUQI, LLP
685 Third Avenue, 26th Floor
New York, New York 10017
(212) 983-9330
jwilson@faruqilaw.com

ROBERT W. KILLORIN
FARUQI & FARUQI, LLP
3565 Piedmont Road NE Building Four
Suite 380
Atlanta, Georgia 30305
(404) 847-0617
rkillorin@faruqilaw.com

*Attorneys for Lead Plaintiff-Respondent*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................1

QUESTIONS PRESENTED...........................................................4

STATEMENT OF THE CASE.......................................................4

PROCEDURAL HISTORY............................................................5

ARGUMENT ..................................................................................8

I.   DEFENDANTS' PETITION DOES NOT MEET THE APPLICABLE
     STANDARD OF REVIEW..........................................................8

II.  THE DISTRICT COURT CORRECTLY FOUND THAT *MORRISON*
     DOES NOT APPLY ....................................................................8

III. THE DISTRICT COURT CORRECTLY FOUND PLAINTIFF'S
     DAMAGES METHODOLOGY FITS HIS THEORY OF LIABILTY
     AND SATISFIES *COMCAST*....................................................14

CONCLUSION ...............................................................................23

# TABLE OF AUTHORITIES

**Cases**                                                       **Page(s)**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ........................................................................15

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ..........................................................................1

*CLAL Finance Batucha Investment Management, Ltd. v. Perrigo Co.*,
2011 WL 5331648 (S.D.N.Y. Sept. 28, 2011) ..................................12

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) .....................................................................*passim*

*In re Conduent Inc. Sec. Litig.*,
2022 WL 17406565 (D.N.J. Feb. 28, 2022) ....................................22

*Costas v. Ormat Techs., Inc.*,
2019 WL 6700199 (D. Nev. Dec. 6, 2019) ......................................14

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011) ........................................................................22

*Howard v. Liquidity Servs. Inc.*,
322 F.R.D. 103 (D.D.C. 2017) ........................................................23

*Morrison v. National Australia Bank Ltd.*,
561 U.S. 247 (2010) ...................................................................*passim*

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
259 F.3d 154 (3d Cir. 2001) ............................................................23

*In re Petrobras Sec.*,
862 F.3d 250 (2d Cir. 2017) ............................................................14

*Rodriguez v. Nat'l City Bank*,
726 F.3d 372 (3d Cir. 2013) ..............................................................8

*In re Teva Sec. Litig.*,
512 F. Supp. 3d 321 (D. Conn. 2021) .........................................9, 13

*University of Puerto Rico Retirement System v. Lannett Co.*,
    2023 WL 2985120 (3d Cir. Apr. 18, 2023) ...............................................*passim*

*Utesch v. Lannett Co., Inc.*,
    2021 WL 3560949 (E.D. Pa. Aug. 12, 2021) ..............................................19, 22

*In re VeriFone Holdings, Inc. Sec. Litig.*,
    2014 WL 12646027 (N.D. Cal. Feb. 18, 2014) ...............................10, 11, 12, 13

*Vizirgianakis v. Aeterna Zentaris, Inc.*,
    775 F. App'x 51 (3d Cir. 2019) ...........................................................................8

*Vrakas v. U.S. Steel Corp.*,
    2019 WL 7372041 (W.D. Pa. Dec. 31, 2019) ...................................................22

*Waggoner v. Barclays, PLC*,
    875 F.3d 79 (2d Cir. 2017) ..........................................................................15, 16

**Other Authorities**

Rule 23(b)(3) ............................................................................................................14

7 William B. Rubenstein,
    Newberg on Class Actions § 22.81 (6th ed.) (Westlaw 2023) ..........................15

## CORPORATE DISCLOSURE STATEMENT

Lead Plaintiff Gerald Forsythe is not a corporation.

**INTRODUCTION**

The District Court's class certification order is paradigmatic of the "rigorous" analysis of Rule 23's requirements that the Supreme Court requires. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465 (2013).[1] After analyzing the parties' motion papers, conducting a five-hour evidentiary hearing that involved direct and cross-examination of the parties' economic experts, and weighing the evidentiary record, the District Court determined that each of Rule 23's requirements was satisfied and granted class certification in a 57-page, exhaustive opinion.

Defendants attempt to spin their dissatisfaction with this result into grounds for interlocutory appeal, arguing that the class certification order presents novel and unsettled questions of law, that the District Court erred in certifying the class, and that the appeal might facilitate the development of law on class certification. But the only thing novel and erroneous here are the arguments Defendants seek to press on appeal.

First, Defendants argue that the District Court's certification of a class that includes purchasers of Israeli securities runs afoul of the Supreme Court's decision

_____

[1] Plaintiff uses the following conventions herein: (1) all capitalized terms have the same meaning as the terms in the Corrected Class Action Complaint ("Complaint"), A-1-98; (2) all paragraph references are to the Complaint; (3) all emphases are added, and all citations and internal quotations are omitted.

in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), which found that Section 10(b) does not apply extraterritorially and was based largely on concerns about interference with foreign countries' securities laws. As the District Court found, *Morrison* does not apply here, where the defendant company's securities are dual-listed on U.S. exchanges and the Tel Aviv Stock Exchange ("TASE"), because the Israeli Supreme Court has confirmed that Israel adopted Section 10(b) as a cause of action for TASE traders in those circumstances. While few cases address this situation, it is hardly "novel" for district courts to decide questions of foreign law, and the clarity of Israeli law on this issue and the infrequency with which it will arise given the relatively few companies with dual-listings on U.S. stock exchanges and the TASE means that the District Court's decision is highly unlikely to cause "confusion" or subject litigants to a "multiplicity of unpredictable tests" in a variety of jurisdictions, as Defendants purportedly fear.

Second, Defendants argue that the District Court erred by finding that common issues predominate under Rule 23(b)(3) because Plaintiff's theory of liability matches his proffered damages methodology under *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). Although the class certification order conscientiously follows this Court's recent decision addressing *Comcast* in *University of Puerto Rico Retirement System v. Lannett Co.* ("*Lannett II*"), 2023

WL 2985120 (3d Cir. Apr. 18, 2023) to a tee, Defendants request that this Court "clarify" its seven-month-old opinion (involving identical arguments by the same defense expert here) because Defendants are concerned that too many securities actions will be certified. The *Lanett II* decision, however, is exceptionally clear.

In *Comcast*, the plaintiffs asserted four distinct theories of antitrust impact and only one integrated damages model that encompassed all four theories. The *Comcast* damages model could not parse out the damages attributable to the one theory of antitrust impact remaining in the case. But here, Plaintiff advances a single theory of liability: that Defendants' false and misleading statements inflated the market price of Teva's securities, harming investors who purchased Teva stock at inflated prices upon the revelation of the truth. Plaintiff proposes a single damages model by his expert, Dr. Zachary Nye, that is consistent with that theory and is "the traditional measure of damages in a 10b-5 action." *Lannett II*, 2023 WL 2985120, at *4. The fact that the District Court did not find all of Plaintiff's allegations of falsity to be sufficiently pled does not change Plaintiff's theory of liability whatsoever. Rather, the statements found not to be false or misleading are potentially confounding information that Plaintiff's damages model allows to be disaggregated later in the litigation, if necessary.

For the foregoing reasons, Defendants' Petition should be denied.

## QUESTIONS PRESENTED

1. Did the District Court err by including TASE securities traders in the Class where it is uncontested that Israeli law provides a 10(b) cause of action to such traders?

2. Did the District Court err by finding predominance where Plaintiff alleges a damages model that fits his one theory of liability consistent with *Comcast* and this Court's recent decision in *Lannett II*?

## STATEMENT OF THE CASE

This Action asserts claims under Sections 10(b) and 20(a) of the Exchange Act against Teva, a global pharmaceutical company, and certain of its current and former officers and directors. As alleged in the Complaint, during the Class Period Defendants claimed that the success of Teva's multiple sclerosis drug Copaxone was due to lawful and sustainable reasons such as its safety, efficacy and patient outreach efforts that generated "brand loyalty." In reality, Copaxone's success arose from Defendants' scheme with a specialty pharmacy to funnel hundreds of millions of dollars through two charities to pay Copaxone patients' Medicare co-pay obligations. This scheme allowed Teva to keep sales up, raise the price of Copaxone to over 19 times the rate of inflation, artificially inflate revenues, and seize control of a larger market share for MS treatments despite competition from lower cost generic drugs.

The truth behind Copaxone's success was revealed to the market on August 18, 2020, when the U.S. Department of Justice ("DOJ") filed a complaint exposing the scheme and alleging that Teva's conduct violated the anti-kickback statute and the False Clams Act. The resulting immediate and substantial decline of Teva's securities price damaged Class members.

## PROCEDURAL HISTORY

Defendants moved to dismiss Plaintiff's Complaint and, on March 25, 2022, the District Court denied, in part, Defendants' motion, finding that Defendants' statements concerning Teva's compliance with federal law were not misleading, but that Teva's statements regarding Copaxone's market share and Teva's Shared Solutions Program—a vehicle for the kickback scheme—were misleading. The District Court found that "Plaintiff has pleaded all the requirements necessary to state a claim under Section 10(b) and Rule 10b-5 as to all Defendants (except as to Defendant Kalif)," and otherwise sustained the Complaint. A-99-139.

Following a Rule 16 conference on June 14, 2022, Defendants filed and the Court granted Defendants' motion to stay in favor of the DOJ Action, allowing only class certification to go forward. ECF Nos. 82-83, 86-87. Accordingly, Plaintiff moved for class certification on September 13, 2022 on behalf of "[a]ll persons or entities that purchased or otherwise acquired Teva securities between October 29, 2015 and August 18, 2020, inclusive, and were damaged thereby."

ECF No. 90-1 at 2.

As relevant here, Plaintiff's motion included a Notice of Intent to Address Foreign Law concerning: (1) the availability of Israeli purchasers of Teva's ordinary shares on the TASE to bring U.S. causes of action; (2) Israeli recognition of U.S. security class action proceedings and precedent related thereto; and (3) the Israeli causes of action applicable to securities fraud victims. A-206-08. Plaintiff addressed those issues through the expert Declaration of Professor Amir N. Licht. A-163-205.

Plaintiff submitted the expert report of Dr. Zachary Nye, who opined that the widely-accepted event study, a/k/a the out-of-pocket damages methodology, can calculate damages on a classwide basis in this case. ECF No. 90-3.

In opposing Plaintiff's motion, Defendants argued that TASE traders were not properly included in the Class under *Morrison*, ignoring Dr. Licht's testimony that Israeli law allows TASE traders to bring claims under §10(b).

Defendants did not dispute that the market for Teva securities in the U.S. and Israel was efficient. Defendants' expert, Dr. Marietta-Westberg, never affirmatively opined as to whether classwide damages could be estimated in this matter. Instead, Defendants argued that this method does not match Plaintiff's theory of liability as required by *Comcast* simply because the District Court did not find all the statements alleged to be false or misleading. This caused Dr. Marietta-

Westberg's concern that Dr. Nye's damage model could not be used. However, Dr. Nye testified that in this case, unlike *Comcast*, there was a single theory of liability and that his event study was robust enough to estimate damages based on the allegations of falsity that the District Court upheld. A-324:¶19; A-383-84; A-424-26.

Plaintiff's single theory of liability is that Defendants made materially false or misleading statements to the market, causing Teva's securities' prices to be artificially inflated throughout the Class Period, and when the market learned the truth, the price declined, resulting in damages to the Class. Plaintiff alleges that the Class Period statements about Copaxone's success were misleading because they concealed that the success was due to the kickback scheme that was revealed in detail to the market for the first time when the DOJ complaint was filed, and those risks flow naturally from the remaining misstatements in the case. But even if those risks were confounding information that needs to be disaggregated—which is a loss causation issue not appropriately decided at the class certification stage— Dr. Nye's damages model is capable of doing so. *See, e.g.*, A-327:¶21, A-383, A-599-600.

After considering the parties' written and oral arguments, the District Court conducted a rigorous Rule 23 analysis and certified the Class.

**ARGUMENT**

## I. DEFENDANTS' PETITION DOES NOT MEET THE APPLICABLE STANDARD OF REVIEW

While the Court has broad discretion in deciding whether to grant

permission for interlocutory appeal under Rule 23(f), Rule 23(f) petitions are

"discouraged" when, as here, "the natural course of litigation will provide the

moving party with an adequate remedy, or when the certification decision was

routine and easily resolved." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 377 (3d

Cir. 2013).

The Third Circuit "review[s] a class certification order for ***abuse of***

***discretion*** . . . bear[ing] in mind the trial court, well-positioned to decide which

facts and legal arguments are most important to each Rule 23 requirement,

possesses broad discretion to control proceedings and frame issues for

consideration under Rule 23." *Vizirgianakis v. Aeterna Zentaris, Inc.*, 775 F.

App'x 51, 52 (3d Cir. 2019).

For the reasons explained below, Defendants identify no error at all, let

alone any abuse of discretion, and their attempt to describe their routine *Comcast*

challenge and the straightforward application of unchallenged Israeli law as "novel

or unsettled" issues fail.

## II. THE DISTRICT COURT CORRECTLY FOUND THAT *MORRISON* DOES NOT APPLY

*Morrison* does not bar certification of a class that includes investors who

8

purchased their securities on the TASE.  The issue in *Morrison* was whether §10(b) "provides a cause of action to foreign plaintiffs suing foreign and American defendants for misconduct in connection with securities traded on foreign exchanges."  *Morrison*, 561 U.S. at 250-51.  The plaintiffs in *Morrison* were Australians suing an Australian company whose securities traded on an Australian exchange.  Australia filed an amicus brief "complain[ing] of the interference with foreign securities regulation that application of §10(b) abroad would produce[.]" *Morrison*, 561 U.S. at 269, 273 ("This case involves no securities listed on a domestic exchange, and all aspects of the purchases complained of by those petitioners who still have live claims occurred outside the United States.").

Here, by contrast, Plaintiff is a U.S. investor suing a company that is dual-listed on exchanges in the U.S. and Israel, and Israeli law grants a §10(b) cause of action to TASE traders who trade in U.S.-listed securities subject to Israel's unique dual-listing arrangement.  A-179:¶60.  Israel's dual-listing regime "includes explicit concessions on its sovereignty by subordinating its jurisdiction to prescribe, to adjudicate, and to enforce relevant securities laws and anti-fraud statutes to that of foreign jurisdictions, including the United States."  *In re Teva Sec. Litig.*, 512 F. Supp. 3d 321, 341 (D. Conn. 2021).  Providing a vehicle for all Teva investors to recover damages for a single §10(b) claim is efficient and consistent with U.S. and Israeli law.

In support of his class certification motion, Plaintiff submitted the declaration of Dr. Licht, an expert on the law applicable to companies cross-listed on the TASE. A-163-205. As Dr. Licht explained, Israel's unique dual-listing regime provides that Israeli securities law is governed by the substantive law of the foreign country on whose exchange the company's securities are dual-listed—here, U.S. law. A-166:¶14; A-176-179:¶¶55-57, 59; A-185:¶71; A-189:¶83. Thus, "Israeli law grants a §10(b) cause of action to TASE traders who trade in U.S.-listed securities subject to the dual listing arrangement," A-179:¶60, making the concerns about §10(b)'s extraterritorial reach at issue in *Morrison* irrelevant. Indeed, after *Morrison* was decided, the Israel Securities Authority submitted a comment letter to the U.S. Securities and Exchange Commission in 2011 reflecting its view that *Morrison*'s reasoning applies poorly to Israeli dual-listed companies. A-567. As Dr. Licht explains, Israeli courts have since "clarified that *Morrison* does not impinge on the application of U.S. Law to dual listed companies." A-199:¶107.

Despite having **completely ignored** Dr. Licht's testimony and evidence at the briefing stage and producing no evidence of their own establishing that Israeli law says otherwise,[2] Defendants now seek interlocutory review based on the incorrect

---

[2]     Their closest attempt to this is citing in their Petition an objector in *In re VeriFone Holdings, Inc. Sec. Litig.* who served as a putative class representative

premise that the District Court erred by "reinterpreting the policies underlying *Morrison* instead of applying the decision itself." Pet. 9. However, the District Court thoroughly analyzed *Morrison* and concluded that it does not apply in this case. As the District Court explained:

> *Morrison* did not consider the applicability of Section 10(b) of the Securities Exchange Act in the unique circumstance of a security dual-listed between the United States and Israel. Instead, *Morrison*'s stated concerns for its holding—nonintervention in foreign securities regulation—have been mitigated entirely by the Israeli Supreme Court's ruling that U.S. substantive law governs Israeli securities law claims.

A-565, 567-68.

The District Court also addressed Defendants' argument that the decisions addressing *Morrison* and Israeli law that run contrary to their argument do not apply here because this case does not involve Israeli securities law claims. A-568. As the District Court explained, "Israel's absolute deference to U.S. substantive law is still relevant because the class seeks to include purchasers of ordinary shares sold only on the TASE, who would otherwise only bring Israeli law claims." A-

---

for Israeli investors who traded VeriFone stock on the TASE—not claimed to be an expert on Israeli law—who said that Israeli securities law has a different scienter standard than 10(b). Petition for Permission to Appeal Pursuant to Fed. R. Civ. P. 23(f) and Fed. R. App. P. 5 ("Petition" or "Pet.") at 11 n.7. The District Court in *Verifone*, however, stated that "the Israeli district court ruled twice that U.S. law, and not Israeli law, applies to the Israeli class action." 2014 WL 12646027, at *1 (N.D. Cal. Feb. 18, 2014). As per Dr. Licht, that would also be the case here. A-204:¶126.

568. There is no need to assert Israeli law claims when the Israeli Supreme Court itself says that Israeli law grants a §10(b) cause of action to TASE purchasers when those securities are dual-listed on a U.S. exchange, and that American courts are preferred venues for resolving these disputes. *See id.* (citing A-166:¶14 ("The unique legal framework created by the Israeli dual listing regime is thus independent from the regime created by the U.S. Supreme Court in *Morrison*[.] In this setting, by virtue of *its* application of U.S. law, Israeli law grants a U.S.-law cause of action regarding dual-listed securities purchased in Israel, while deferring to—and in fact preferring—the U.S. courts' jurisdiction. Comity considerations thus militate *for* adjudicating disputes over such securities in the United States.") (original emphasis); *see also* A-165-66:¶¶12, 16; A-170:¶32; A-179:¶60; A-189:¶83; A-194:¶¶93-94; A-199-200:¶¶107-08.[3]

While it is true that "[f]ew courts have addressed whether *Morrison* should apply to cases involving the dual-listing arrangement with Israel's TASE in the traditional class certification context," A-566, this does not mean that it is a "novel and unsettled area of law" justifying interlocutory review. Pet. 2. Courts have

---

[3]     To the extent Defendants argue the *VeriFone* decision would have come out differently if it involved "foreign securities purchased on a foreign exchange," Pet. 10 n.6, Plaintiff notes that *Verifone* was decided well before the Israeli Supreme Court confirmed that U.S. law applies to civil liability for dual-listed companies in 2018. *See* A-189:¶83; A-194:¶93. That is also the case for *CLAL Finance Batucha Investment Management, Ltd. v. Perrigo Co.*, 2011 WL 5331648 (S.D.N.Y. Sept. 28, 2011).

found that *Morrison* is distinguishable in light of Israeli law. *See Teva*, 512 F.

Supp. 3d at 343 (*Morrison* did not preclude exercise of supplemental jurisdiction

over Israeli law securities claims); *VeriFone*, 2014 WL 12646027, at *3 (*Morrison*

did not deprive the court of its ability to release Israeli investors' claims in class

settlement). Nothing about the District Court's decision in this case will lead to

confusion about *Morrison*'s proper application, let alone a "multiplicity of

unpredictable tests, dependent on each court's interpretation … of what the

legislators of potentially scores of foreign countries would have wanted." Pet. 11

n.8. First, Israel is unique in granting those who purchase on the TASE §10(b)

causes of action, A-166:¶14, and the District Court was clear that was the basis for

including TASE purchasers in the Class, A-564-69. Considering that only about

51 companies are currently dual-listed on U.S. exchanges and the TASE, this issue

in the securities fraud context is unlikely to come up frequently.[4] Second, it is

highly unlikely to cause any "confusion" or "unpredictable tests." Pet. 3, 11 n.8.

The Israeli Supreme Court has spoken on this issue, and therefore there is no

danger that U.S. courts will be in the position of trying to interpret what Israel

"would have wanted." *See* A-189:¶83; A-194:¶93; A-199-200:¶108; *Teva*, 512 F.

Supp. 3d at 357 ("In my view, it is settled as a matter of Israeli law that United

---

[4] *See* TASE, Market Data, https://info.tase.co.il/Eng/MarketData/Stocks/
MarketData/Pages/MarketData.aspx?action=2&dualTab=&SubAction=&Date=&is
submitted=1 (last visited Nov. 30, 2023).

States securities law establishes civil liability" under Israeli securities law); *Costas v. Ormat Techs., Inc.*, 2019 WL 6700199, at *9 (D. Nev. Dec. 6, 2019) ("Israeli law applies United States securities law to determine liability in securities litigation regarding dual-listed corporations[.]").[5]

Furthermore, since investors who bought ordinary shares on the TASE may bring claims under §10(b), Defendants are incorrect that ordinary share purchasers could only state a claim under §10(b) if they can show that they engaged in a "domestic transaction." Pet. 9. Plaintiff explained in his class certification briefing that he is only seeking to include as part of the class those ordinary share investors who purchased or acquired their shares on the TASE, as opposed to in some other type of transaction.

The District Court's decision that all purchasers and acquirers of Teva securities be included in the Class is fair, logical, and consistent with the caselaw in the U.S. and Israel.

## III.    THE DISTRICT COURT CORRECTLY FOUND PLAINTIFF'S DAMAGES METHODOLOGY FITS HIS THEORY OF LIABILTY AND SATISFIES *COMCAST*

Rule 23(b)(3) permits a class action to be certified if "the questions of law or fact common to class members predominate over any questions affecting only

---

[5]    *In re Petrobras Sec.*, 862 F.3d 250, 271 (2d Cir. 2017) is inapposite, as no one argued that Brazilian law provides a §10(b) cause of action to those who purchased Petrobras' securities on Brazilian exchanges.

individual members[.]"  The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  "Predominance is a test readily met in certain cases alleging . . . securities fraud[.]"  *Id*. at 625 (1997).

Defendants' only challenge to Rule 23's predominance requirement concerned whether Plaintiffs' damages model is consistent with their theory of liability under *Comcast*.

Defendants argue that the District Court's interpretation of this Court's decision in *Lannett II* "render[s] *Comcast* a nullity in securities cases."  Pet. 13.  That is incorrect: the District Court conducted a thorough analysis of *Lannett II* and *Comcast* in its class certification decision, and explained why Plaintiff's theory of liability is tied to his damages methodology.  To the extent Defendants are dissatisfied that most securities cases will survive a *Comcast* challenge, that is entirely consistent with the fact that *Comcast* "pertain[ed] to . . . antitrust damages[,]" which is a "more complex arena" than securities damages. 7 William B. Rubenstein, Newberg on Class Actions § 22.81 (6th ed.) (Westlaw 2023).  Indeed, "[s]ecurities class actions rarely have trouble complying with *Comcast's* command."  *Id*.  Most courts addressing this issue find that, to the extent *Comcast* applies to securities cases, its requirements are satisfied.  *See id.* (collecting cases); *Lannett II*, 2023 WL 2985120, at *4; *Waggoner v. Barclays, PLC*, 875 F.3d 79,

15

105-06 (2d Cir. 2017).

As the District Court found, Plaintiff satisfies *Comcast* by proposing an out-of-pocket damages methodology, which seeks to measure damages attributable to the alleged fraud and is the universally accepted method for calculating damages arising from claims under §10(b), as Defendants and this Court agree. *See* A-317:¶10; Pet. 4; *Lanett II*, 2023 WL 2985120, at *4 (the out-of-pocket damages method proposed here is "the traditional measure of damages in a 10b-5 action"). This model calculates damages using an event study to isolate the decline in Teva's stock price related to Company-specific news from price movement caused by other factors on the date the truth was revealed, like changes in industry conditions or unrelated Company-specific information. A-317-18:¶¶10-11. After isolating the price impact of the alleged surviving misstatements, the price inflation due to the alleged fraud can be estimated for each day of the Class Period, and on a Class-wide basis for each Class member. A-317-19:¶¶10-12.

This methodology matches Plaintiff's single theory of liability, which has been the same throughout this litigation. That is, that "Defendants made material misrepresentations and omissions; that Defendants' misrepresentations" maintained Teva's stock price at artificially inflated levels; "and the stock price declined when the truth emerged causing financial loss to Plaintiff and the class." A-594; *see also* A-318-19:¶12. This is the same theory of liability and damages

methodology that this Court found satisfied *Comcast* in the *Lannett* case earlier this year:

> Here, [plaintiff's] theory of liability is that Lannett's misrepresentations artificially inflated Lannett stock, and that the stock price declined when the truth emerged causing financial loss to those who purchased at inflated prices; its proposal to use the out-of-pocket method to measure loss is tied to this theory of liability.

*Lannett II*, 2023 WL 2985120, at *4.

Despite the obvious similarities between this case and *Lannett*, Defendants argue that this case is more like *Comcast*. Pet. 13-14; A-489. There, the plaintiffs "offered four theories of antitrust impact"—*i.e.*, "***multiple theories of how the defendant's conduct violated the law***[.]" *Lannett II*, 2023 WL 2985120, at *3-4. These theories were: (1) Comcast's clustering made it profitable to withhold local sports programming from competitors, resulting in decreased market penetration by certain satellite providers; (2) Comcast's activities reduced competition from "overbuilders," who build competing cable networks where a cable company already operates; (3) "Comcast reduced the level of 'benchmark' competition on which cable customers rely to compare prices"; and (4) clustering increased Comcast's bargaining power. *Comcast*, 569 U.S. at 31. Each of these things allegedly increased cable subscription rates throughout a 16-county area. *Id.* at 29-31. The lower court dismissed all theories of impact except for number 2—the "overbuilder" theory. *Id.* at 31.

The *Comcast* plaintiffs' expert, however, created a damages model that "assumed the validity of all four theories of antitrust impact" "as a whole," without specifying how damages attributable to the overbuilder theory alone could be measured. *Id.* at 36-37. The record in *Comcast* reflects that the overbuilder theory raised classwide fact questions that were not relevant to the other three theories of classwide injury, including the percentage of those served by an overbuilder and in what counties. *See Brief for Petitioners, Comcast Corp. v. Behrend*, 2012 WL 3613365, at *5-6 (U.S. Aug. 17, 2012). As the Supreme Court noted, "[f]or all we know, cable subscribers in Gloucester County may have been overcharged because of petitioners' alleged elimination of satellite competition[,]" while those in "Camden County may have paid elevated prices because of petitioners' increased bargaining power[,]" and those in "Montgomery County may have paid rates produced by the combined effects of multiple forms of alleged antirust harm[.]" *Comcast*, 569 U.S. at 37-38. Thus, the *Comcast* court found that the plaintiffs' damages model did not match the remaining theory of liability. *Id.*

Defendants attempt to analogize this case to *Comcast* by confusing the District Court's finding that certain statements were not misleading with a dismissal of distinct theories of liability under antitrust law. That is simply incorrect. Plaintiff alleged three categories of alleged misstatements: (1) those relating to Copaxone's market share; (2) those relating to Teva's Shared Solutions

Program; and (3) those relating to Teva's compliance with federal law. A-592. The District Court found that the first two categories of misstatements were misleading "because they put the source of Copaxone's success at issue, whether or not the scheme was illegal." A-593. The third category did not, so the District Court found that "[a]ccordingly, Teva's statements regarding its compliance with governing laws were not misleading." A-123.

At class certification, Defendants argued that because statements relating to Teva's compliance with federal law were not misleading and the District Court found that the allegation of "illegality" when describing Teva's illicit scheme was "largely immaterial," there was a mismatch between the alleged misrepresentations and the corrective disclosure—the filing of the DOJ complaint. A-216, A-219. Defendants' arguments were based on the reports and testimony of their expert, Dr. Marietta-Westberg, who made substantially similar arguments in *Lannett* that were ultimately rejected by this Court. *See Utesch v. Lannett Co., Inc.* ("*Lannett I*"), 2021 WL 3560949, at *17 (E.D. Pa. Aug. 12, 2021). To satisfy *Comcast*, Defendants argued, "Plaintiff must provide a class-wide measure of damages that captures the price impact, if any, of information in the DOJ complaint distinct from the news of Teva's potential exposure to future legal fees, penalties, treble damages, fines, settlements or reputation harm." A-592. Defendants press the same faulty arguments in their Petition.

The District Court's finding that statements about Teva's compliance with federal law were not misleading is not tantamount to the dismissal of separate theories of liability that occurred in *Comcast*. As the District Court explained in its class certification order, the motion to dismiss order "did ***not*** dismiss any of Plaintiff's claims or theories. Although the [District] Court held that Teva's statements relating to compliance with federal law were not ***misleading***, this holding did not alter Plaintiff's theory of the case." A-593.

This is entirely consistent with *Lannett*. Defendants argued at the class certification hearing that this case is unlike *Lannett* because there, statements about Lannett's compliance with the law were not dismissed. A-595. The District Court considered Defendants' argument but found that it "fails to consider the remainder of the [*Lannett*] court's analysis." A-595. There, this Court agreed that *Comcast* was inapposite because the "numerical mismatch between damages model (one model) and liability theory (four theories) at issue in that case" was not present. *Lannett II*, 2023 WL 2985120, at *4. The lower court, whose decision this Court affirmed, explained, "[a]lthough the [*Lannett*] Complaint alleges many misrepresentations about various, interrelated topics, because each of Defendants' alleged misrepresentations is part of their broader alleged concealment of the lack of competition in the generic drug market and the potential adverse consequences on Lannett's business, ***each misrepresentation is categorically part of the same,***

***single theory***." A-595-96 (citing *Lannett I*, 2021 WL 3560949, at \*12).

That is also the case here. Plaintiff successfully alleges that the remaining statements relating to Copaxone's market share and the Shared Solutions Program were false and/or misleading because they concealed the true nature of the Shared Solutions kickback scheme and that Copaxone's success was due to the kickback scheme. A-320-27:¶¶13-21. That scheme was revealed in detail to the market for the first time when the DOJ Complaint was filed. *Id.* The characterization of Teva's scheme as "illegal" (which adjective was not universally applied throughout the Complaint to describe the scheme) was largely immaterial to the Complaint's allegations. The lack of an existing criminal conviction at the Class Period's end does not mean that the market was unconcerned with the ramifications of the DOJ Complaint's accusations of illegality.

Regardless, the fact that certain allegations of falsity may need to be disaggregated from the ultimate damage estimation does not pertain to the identification of a common methodology for calculating damages—which Plaintiff's expert Dr. Nye has done—but rather would concern the calculation of the inputs into the common model and the quantification of damages. *See* A-599-600. "[T]he inputs to the model will be the same for all Class members," and even if information "will need to be disaggregated, …. it does not affect class certification because the way that information will be applied and disaggregated ***is***

*the same for all proposed Class members*." *Vrakas v. U.S. Steel Corp.*, 2019 WL 7372041, at *8, *10 (W.D. Pa. Dec. 31, 2019) (explaining that although certain statements were not adequately plead as false or misleading, "they operated under the same theory of liability—that of alleged misrepresentations and omissions—as the one remaining claim," and the statements not found to be false constitute information that can be disaggregated at a later stage); *Lannett I*, 2021 WL 3560949, at *17 ("each of the issues raised in [Dr. Marietta-Westberg's] report concern a matter entirely common to the class … whether Plaintiffs will be able to accurately calculate how much of the increase or decrease in Lannett's stock price is attributable to Defendants' alleged fraud, and the revelation of that fraud, rather than other potential factors").  Indeed, those input calculations require a loss causation analysis, a merits issue that is irrelevant to and not considered at the class certification stage.  *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011) (the court "erred by requiring [plaintiff] to show loss causation as a condition of obtaining class certification"); *In re Conduent Inc. Sec. Litig.*, 2022 WL 17406565, at *5 (D.N.J. Feb. 28, 2022) ("[H]ow Lead Plaintiff will ultimately prove loss causation (i.e., distinguish the impact of [the] disclosure from other disclosures, news, and inflation) is a merits question that need not be answered at class certification").

    Defendants will have the opportunity to contest Plaintiff's damages

calculations at summary judgment and trial.  *See Howard v. Liquidity Servs. Inc.*, 322 F.R.D. 103, 140 (D.D.C. 2017) (if "defendants believe that the plaintiffs' expert will be unable to isolate the alleged inflationary impact of supposedly false statements" still in the case from  statements found not to be false or misleading, "the defendants may take up that issue after the class is certified with respect to all class members"); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 164-65 (3d Cir. 2001) ("if allowing the litigation to follow its natural course would provide the moving party with an adequate remedy, interlocutory review will generally prove unnecessary").

## CONCLUSION

Plaintiff respectfully requests that the Court reject Defendants' Petition.

Dated: December 1, 2023       Respectfully submitted,

**FARUQI & FARUQI, LLP**

By:   */s/ Timothy J. Peter*
       Timothy J. Peter

Timothy J. Peter
1617 John F Kennedy Blvd #1550
Philadelphia, PA 19103

James M. Wilson, Jr.
Robert W. Killorin (admission to be filed)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor

New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email:   jwilson@faruqilaw.com
        rkillorin@faruqilaw.com

*Attorneys for Lead Plaintiff and Lead
Counsel for the putative Class*

## CERTIFICATE OF BAR MEMBERSHIP

I HEREBY CERTIFY that I am counsel of record and am a member of the

bar of the United States Court of Appeals for the Third Circuit pursuant to Local

Appellate Rule 46.1(e).


Dated: December 1, 2023         By:    /s/ Timothy J. Peter
                                                 Timothy J. Peter

# CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that this brief complies with the type-volume limitation of Fed. R. App. P. 5(c)(1). This brief contains 5,186 words, excluding the parts of the brief exempted by Rule 32(f) of the Federal Rules of Appellate Procedure. This brief complies with the typeface and type-style requirements of Rules 32(a)(5)-(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

This brief complies with the electronic filing requirement of Local Appellate Rule 31.1(c). A virus check was performed on the electronic version of this brief using Microsoft Word 2016, and no viruses have been detected.

Dated: December 1, 2023          By:    /s/ Timothy J. Peter
                                              Timothy J. Peter

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 1, 2023, the foregoing Response to Petition for Permission to Appeal Pursuant to Fed. R. Civ. P. 23(f) and Fed. R. App. P. 5 was filed through the CM/ECF system and served on all relevant parties' counsel of record through the CM/ECF system.

Dated: December 1, 2023         By:   <u>/s/ Timothy J. Peter</u>

                                               Timothy J. Peter